we're not in a rush even though it's Friday but we'll go to our next case as soon as council is ready 24-4197 give us just a moment let council get situated and we'll be happy to hear from you mr. Rossi Rossi mr. Rossi thank you you may proceed please counsel may please the court I'm Gene Rossi and my colleague Jillian Blumenthal we represent dr. Kirsten Ball who is a defendant appellant in this case your honors this matter involves a flawed analysis of what the Supreme Court said in Ruan and also in Smithers both cases cited correctly and indirectly a famous criminal tax case called the United States versus Cheek and the reason I mentioned Cheek is it sets forth a subjective good-faith test for a pain management physician in the issuance of a prescription and I will get to more details and why Cheek is so important to this case because Justice Breyer and to some extent the concurrence by Justice Alito adopted wholly the logic of Cheek in applying the men's rate of Cienter to a physician who's trying to seek authorization under title 21 section 841 a the court's jury instructions are at the heart of our appeal and our position is this your honors they were wholly inadequate in conveying to the jury the argument that I could have made before the jury and I want to punctuate that point I've listened to the three cases before this and I think it's fair to say that when the district court judge says you can't make an argument in closing you can take that to the bank and the district court judge in good faith no pun intended has a reading or had a reading of Ruan and Smithers and Cheek that is legal error and it was harmful to our case. What happened in this case is the government and the defense filed a set of proposed jury instructions joint agreed several days before trial we worked very hard on that as the evidence in the record suggests and we filed that with the court and words are important especially in the law and in our joint agreed proposed jury instructions the word HER is predominant predominant and the reason it was our view is that word HER in the usual course of her professional practice the reason that word HER is so important is that it takes away from the jury the role of comparing a doctor's subjective belief to some reasonable avatar of a medical doctor and I'm going to get to that in a moment but here's what happened. Yes sir. Just because I've read the briefs and I think I understand where you're coming from yes I mean it I mean you're you're a hundred percent right that the mens reo requires a subjective intent and but but the subjective intent is that the prescription of the the drugs are not are outside the bounds of a normal ordinary practice of the ordinary practice and and and isn't it why is it okay if the court has emphasized that you must have a subjective intent for there to be implicit in there is there is an objective standard and whether the particular practice is consistent with that or not is relevant to whether the defendant has a subjective intent not determining it's not like you're outside it therefore you're liable like a med mal case but you know you're outside it and how far your practice deviates from that objective standard matters. Judge Quarterbomb you asked the question that goes to the heart of our case and the answer is in the opinion in Rwan pages 13, 14, and 15 in the majority opinion and I'll get to Justice Alito when it's concurrence on pages 13, 14, and 15 your honor will find the answer to that question. The United States Solicitor General made the same argument that for that authorized point authorized clause of section 841 made the same argument that you cannot allow idiosyncrasies. You can't allow wildly idiosyncratic conduct that's outside of what an objective reasonable doctor would be. Justice Breyer your honor with utmost respect he rejected that argument. He rejected it and it's on the last paragraph of page 13. He rejected it. So I understand what the opinion says is that you have to have subjective intent and when the government says well that would mean someone could have some kind of way out their sort of view they'd say yeah if it was subjectively their belief that's enough but then the opinion goes on to say that the regulation defining the scope of the doctor's prescribing authority does so by reference to objective criteria such as legitimate medical purpose and usual course of professional practice and then it goes on after the site to say as we have said before the more unreasonable a defendant's asserted beliefs and misunderstandings are and here's what I'm getting to especially as measured against objective criteria the more likely the jury may find that the government has carried its burden. Here's our response to that your honor. It's an excellent question and it goes to Cheek and the reason I mention Cheek so much so far so quickly is the court is adopting the test in Cheek and it's a title 26 case income tax case involving an airline pilot. In Cheek the court said an individual or even a tax preparer can have irrational beliefs, can have incredible beliefs, can have gross misunderstandings, can have unreasonable beliefs but the test in Cheek which was applied in Ruan is that you have to compare their conduct and how they acted and you can compare it to objective standards. Our point is this by taking out that pronoun HER your honor and this is in our especially the reply, your honor by taking out that HER it told the jury that they have to compare her conduct, Dr. Ball's conduct, to an objective standard and Ruan rejects that. In the same pages that your honor just quoted there's talk, I think it's the next page, where they reject this reasonable doctor test. You can't tie, this is the point, you cannot tie your honor a doctor's conduct to a reasonable doctor and Justice Alito talks about this in the concurrence. He says you can be a reckless doctor, you can be a bad doctor but we cannot say that just because you're a bad doctor when compared to an objective standard you're guilty. That's an important point that Justice Alito makes and it's probably the most profound part of that opinion. And it goes back to does that doctor, Dr. Ball, have a subjective good faith belief that when she issued that prescription in the course of HER medical practice was she trying to achieve a medical purpose and the jury was not allowed to consider that and with the utmost respect to the trial judge I was informed that I could not make any wildly idiosyncratic arguments that say that she went a little bit too far on prescriptions when compared to an objective standard. I can't argue that that's allowed. But here's the problem with the evidence in this case, in our favor I should say. The CDC guidelines in 2016 and then in 2022 were changed and it was dramatically changed and we brought that up at trial your honor and the CDC guidelines in 2022 said that the guidelines are voluntary, they're recommendations and the reason we're making it this way, in my view, is we want doctors to be able to focus on the particular, I can't pronounce it, on the particular needs of the patient. And that gets to HER professional practice. And the judge below gave a tell and for the record, I want to refer to three parts in the Joint Appendix that just lay out what happened here. Joint Appendix 1903 is when Judge Brinkman in the charging conference made the comment that Rouen prohibits idiosyncratic arguments. And in that pre-trial conference, after she rejected the joint agreed proposed instructions, she said, I'm going to change the CFR. She changed the CFR. The second important part of this case is, with utmost respect to my colleague on the other side, she followed the lead of the judge and the prosecutor made a comment that you can't have wildly idiosyncratic practices. They are tied, T-I-E-D, to objective standards. That comment. So can I go? Yes, sir. Just on our decision in NOM, which is the 2025 decision, we say that Rouen holds that a physician must have subjectively believed that his conduct was outside the bounds of professional practice, right? Not that physician's personal practice, but professional practice. Why doesn't that case, maybe you think the case is wrong, but why doesn't that case, I happen to think it's consistent with Rouen, but even if you think that that case is wrong, why doesn't that resolve this question? Because in essence, what Judge Brinkema did, maybe it was before NOM came out, but applied that standard, which is subjective belief that it was outside the bounds of the, the's not there, but I read that to say the professional practice, not outside the bounds of her idiosyncratic practice. You're wrong. Because if she was running a, let's say she's just a straight drug dealer, right? But you know, if that's what her practice was, well, it would be within the bounds of her drug dealing practice to deal drugs. And it seems like Rouen's not saying that, and NOM's not saying that, that it's asking the question, do you subjectively believe that it's within the objective bounds of professional practice? Your Honor, I respectfully disagree. I don't have any doubt about that. Tell me why. I know that you can disagree, but tell me why I should ignore the language from the panel decision interpreting Rouen, it seems to me, the way Judge Brinkema did and not the way you want us to by looking back at Sheik or some other. That, that opinion does not say that the, that, that the usual practice, usual course of professional practice, that opinion does not say that the subjective good faith is tied to objective standards. It doesn't say that, Your Honor. What it says is. So, so when we read outside the bounds of professional practice, you think I should read professional practice there to be what? Other than objective. Of the doctor's professional practice, and then we go back to Sheik. Your Honor. No, no, that's like flatly not what the case says, right? I mean, I, I understand that you have this argument that Rouen said something other than what Judge Brinkema determined, but I, unless I, maybe I've got the quote wrong, right? I'm at 239, subjectively believed his conduct was outside the bounds of professional practice. I have not his or hers or this particular, but professional practice, which is an objective standard. No, Your Honor. I am on page 13 of Rouen and I, and I'm not asking about Rouen, right? Because we're bound by panel precedent and a panel precedent directs that Rouen means the following, right? That is an objective standard for professional practice. Um, then we're bound by it, right? It's like, it's like a full stop, right? And so, I, I guess what I, I understand that you have an argument that we ought to read Rouen and light a cheek. And if we pull these words out, we can tell this story. I totally get it. Like, I understand it. I'm not saying it's persuasive. I'm just saying I understand your argument. Sure, Your Honor. But, but the question I'm asking is like a narrower one, which is, I am absolutely bound by a prior panel. If I think it is crazy, I'm still bound by it. And so, what I'm asking is what do I do with the language of norm that describes Rouen's holding in a manner that, to me at least, says the bounds of professional practice, which is an objective question. A subjective belief that you fall within the objective bounds of professional practice. Your Honor, it goes back to the court eliminated and prevented and deprived us of making an idiosyncratic argument about the practicing methods of Dr. Ball. Totally understand that. But did you make that argument on appeal? Yeah, yes, we did. Absolutely. As a distinct argument from the jury instructions. Yeah, absolutely, Your Honor. Yes, yes. And what we did further, in our reply especially, we focused on how the removal of that pronoun, H-E-R, made the test. No, no, but I'm working on an assumption now, just hypothetically. Your Honor, my time is up. I think my colleagues will let you answer. I'm working on a, just accept hypothetically that the instruction is correct. Tell me what your argument that you're, I'll go look at it. What is the argument that you're making if I assume the instruction was exactly correct? It is legally perfect. The goal and the motive of the instruction was to prohibit me from making an argument. No, no, but what I'm asking is, if I assume, if hypothetically, just help me walk through, right? Yes, Your Honor. I understand you disagree with the hypothetical, right? But if hypothetically, I found that the instruction was literally perfect, do you have a different argument that you've raised on appeal that I need to address? That's what I'm asking. No, Your Honor. Okay, that's, all right, we'll make sure. All right. I did want to add one more point. You may, please. In rule one, it says the government standard would turn a defendant's criminal liability on the mental state of a hypothetical, reasonable doctor, not on the mental state of the defendant himself or herself. That states to me, when they cite Cheek, that they're not comparing it per se and tying it to an objective standard. Thank you, Your Honor. I understand the argument. Thank you, Your Honor. Thank you. Ms. Rumbaugh? Rumbaugh. Rumbaugh. We'll be happy to hear from you. May it please the court, counsel, Catherine Rumbaugh for the United States. I want to start by giving a brief summary of the evidence that showed the defendant's subjective knowledge in this case. This case was about a doctor who, when her pain patients submitted urine tests that were positive for heroin metabolites, she documented that they had consumed poppy seeds in a variety of formats. When a patient displayed visible track marks indicative of intravenous drug use, when a patient admitted to Dr. Ball that the patient had used heroin, she continued to prescribe large amounts of oxycodone. She falsified records that she submitted to the Board of Medicine. She withheld damaging records from the Board of Medicine. She had her untrained assistant documenting fake patient notes under a fake name to cover for the assistant's and the assistant's family member's own oxycodone prescriptions. When patients admitted to the doctor that they had overtaken their oxycodone pills or shared their pills with family members, she simply ignored it or told them not to tell me, you know, don't tell me that and continued prescribing. And all of this happened after she signed a consent order with the Board of Medicine admitting that she'd violated the standards of care for prescribing opioids. She made her patients sign a pain contract setting forth certain policies that she never enforced. She left written prescriptions for large amounts of oxycodone on her door for patients who traveled as far away from as far away as seven hours to come pick up without having to see her for an in-person appointment or an examination. So, counsel, I don't mean to interrupt you on the facts, but you're talking about evidence, it sounds like, that would was used to show that her practice was outside the bounds of, you know, ordinary practice and that and that and that that the extent of it is evidenced as that her that she subjectively knew it was outside those bounds. Yes, your honor, that's exactly correct. So, and I don't really hear the defendant arguing there wasn't evidence of that. What I hear the defendant arguing is, hey, that's the wrong question. The question is only whether, you know, her it was outside the bounds of her normal practice. Did she believe that? What's your position on that? Your honor, it's the government's position that the defendant seeks to collapse the distinction between the objective authorization element and the subjective mens rea element. And so I want to start, you know, starting with the statute itself, 841 makes it a federal crime except as authorized for any person knowingly or intentionally to manufacture, etc., etc., controlled substance, in this case, oxycodone. And a prescription is only authorized under 21 CFR 1306.04a when a doctor issues it, quote, for a legitimate medical purpose acting in the usual course of his, or in this case her, professional practice. What do you do with that? What do you do? Let's put Ruan aside for just right now. What do you do with his in the regulation? What does that suggest? How do you read that? Well, your honor, I would refer you to what the district court said at sentencing in this case, which was, quote, and this is from JA 2201, just so we're clear, grammatically speaking, her practice does not mean her idiosyncratic personal practice. Her practice is the medical field she's in. So if a doctor is an ophthalmologist, the doctor's practice is the practice of ophthalmology. So in other words, if you were talking about outside the bounds of your practice, it would mean outside the bounds of the law. Maybe a federal prosecutor. Yeah, maybe, yeah. That's right, exactly. So the field that, for example, I am in is the field of a federal criminal prosecutor. And if I knowingly act, you know, I'm now getting my metaphor a little bit far afield, he made you do it. It's not your fault. I think perhaps a more apt way to think about it is if you take the defendant's argument to its logical conclusion, and I think Judge Richardson, you may have been getting at this, imagine a psychiatrist, for example, who, while fully aware of the prevailing standards of psychiatric care, believes that the best way to achieve a psychological breakthrough with his or her patients is to pump up opioid-naive patients so full of oxycodone that they become catatonic. That person could never be prosecuted for drug distribution so long as they treated all of their patients consistently. But you agree, don't you, that this is not a negligent standard? I do, Your Honor. I do agree with that. And what did the district court do to ensure this wasn't a prosecution, a criminal conviction for medical malpractice? So, Your Honor, that was included in the jury instructions. This is in JA 1659 to 1660. The exact jury instruction was, in civil medical malpractice cases, the standard is negligence. That is whether the doctor negligently departed from prevailing standards of care governing the doctor's field of specialty. A criminal prosecution requires more. That is proof beyond a reasonable doubt that the doctor knowingly or intentionally acted outside the bounds of professional medical practice as his or her authority was being used not for treatment of a patient but for something other than a legitimate medical purpose such as the personal profit of the physician or assisting another in the maintenance of a drug habit. So it's the government's position that that very clearly, without question, distinguished the criminal mens rea that the jury was required to find in this case from a civil medical malpractice case. Now, my friend, Mr. Rossi, relies heavily on Cheek, and I did want to address that briefly. Cheek addressed a willfulness standard, which is not the standard in Title 20, in 841 cases. We're looking at a question of knowledge. And more importantly, the government did cite to Cheek in its response brief in the context of Ruan, because that is the context in which the Supreme Court addressed the application of Cheek in prosecuting medical prescribers under Title 21. Namely, and I think Mr. Rossi addressed this, in Ruan the government had argued that if the Supreme Court decided Ruan against it, it would be required to prove, it would allow, quote, bad apple doctors to escape liability by claiming idiosyncratic views about their prescribing authority. The Supreme Court, as we know, rejected the government's concern in that case because, citing Cheek, it said that you can prove knowledge by circumstantial evidence. The more unreasonable a defendant's asserted beliefs or misunderstandings are, measured against objective criteria, the more likely the jury will find that the government has carried its burden. And, you know, based on the evidence that the government presented at trial, some of which I reviewed at the beginning of my presentation, that's exactly what happened here. That language about the whole, from Ruan, you just talked about before the part that refers to the objective criteria, is to answer the question about whether knowledge applies to authorization, correct? I'm sorry, Your Honor, could you ask the question again? Yeah, the language in Ruan that says, you know, the government, I'll just read it, finally the government argues that requiring it to prove a doctor knowingly or intentionally acted not as authorized, that was the question, whether the knowledge requirement was applying to the authorization or not. Yes, Your Honor, that's exactly right. In Ruan, the question was, do you have to act, does the government have to prove beyond a reasonable doubt that the physician subjectively knew that she was acting in an unauthorized manner, meaning knew that she was acting contrary to objective standards of care. Let's see, the defendant also asserts in its reply that the government doesn't address the case of Dole DeLau, which is an 11th Circuit case. The government did address Dole DeLau in its post-trial briefing, that's at JA 2043 to 44, and that case is simply an apposite here. In Dole DeLau, the district court erroneously, pardon me, told the jury that, quote, whether the defendant acted outside the usual course of practice is to be judged objectively by reference to standards of medical practice, and that the jury, quote, must not consider what the defendant believed to be proper medical practice. These statements are obviously wrong under Ruan, and that's completely different from what the trial court said here. Now, Mr. Rossi made a good deal of hay about the fact that, about his position that the instructions prevented him from making his argument to the jury in closing, and I think that that's simply not correct. If you go to JA 1615, this is the part of the transcript where the defendant made his closing argument, the argument that was presented to the jury was, this is not a civil case, it's not medical malpractice, it's not negligence, you're taking it to another level, let's take it up a notch, like Emerald the chef would say. Good faith is a tough burden because it means the defendant acted in accordance with what she subjectively believed, and you might think her subjective belief is unreasonable, but it's what she believed. She believed the best in people. That was her Achilles heel. She loved people. That was her Achilles heel, skipping down a few lines. She subjectively believed she was doing the right thing. At the end of the day, the overriding theme is that she was played. She was played like a fiddle. Every witness said that. She was compassionate. She was trusting. She believed me. That's not a criminal. And so the very argument that the defendant asserts that she was not able to make because of the instructions, she did actually make. So the jury was able to consider it and rejected it. And so if the evidence had shown, you think a jury could have found, maybe not on the evidence here, but a jury could have found that she subjectively but unreasonably believed that she was prescribing these drugs for a legitimate medical purpose. And if they found that, she was not guilty. Your Honor, I think that the jury could consider, I mean, based on the good faith instruction that the judge provided and the argument of counsel, I think the jury could have considered whether she subjectively believed that she was acting in accordance with the bounds of medical practice. That's what a legitimate medical purpose is, right? Yes. I mean, I wasn't trying to, this wasn't meant to be a trick question, right? Like, if she's doing it for a legitimate medical purpose, even if she happens to be wrong about it, that that would be, is your view that that would be sufficient for a not guilty verdict or not? So the way that the regulation is written is to be authorized, the prescription must be made for a legitimate medical purpose in the usual course of professional practice. So essentially, there's a requirement of both. If you flip it around and frame it negatively, then the instruction would say that the government must prove that the defendant knowingly and intentionally issued a prescription not for a legitimate medical purpose or outside, knowingly and intentionally outside the usual course of professional practice. So your point is that that alone, so the subjective belief that it was for a legitimate purpose would not suffice for a not guilty verdict. You would also have to find, as a jury, that it was within the sort of standards of medical practice. You would have to. So long as there was a subjective belief of that. It doesn't matter whether it was actually within the bounds of medical practice. If she subjectively believed it was, even incorrectly, in both instances, if both of these beliefs were incorrect, but subjectively true, that's what is required to get a not guilty verdict. I know I'm flipping the burden. Yes, Your Honor. Yes. Well, it does matter if it's outside, doesn't it? It's double. It must be both outside and she must know it. Is that right? Your Honor, for a prescription to be authorized, both must be issued for a legitimate medical purpose and in the usual course of professional practice. And she must know that it's not in both instances. I'm going to try not to flip around my negatives and say anything incorrectly, but essentially, I think I agree with you.  Finally, the government's position is obviously that the jury instructions correctly stated the standard as set forth in Ruan and in the precedent before this Court, but to the extent that there's any error, it was clearly harmless in light of all of the evidence that the government presented as to the defendant's subjective knowledge. And I would point out— How could it be harmless? He says the standard should be—the test is whether or not it's outside the bounds of her medical practice. It seems to me if he's right, I have a hard time understanding how it's harmless. I mean, you've got a whole bunch of evidence that it was outside the course of the ordinary medical practice. But if he's right, that's not the test at all. It's whether it was outside the bounds of her medical practice. It seems—I mean, I'm not saying that's the right view, but it seems like—maybe I'm not understanding that right. It seems like harmlessness would be a tough argument. Well, I think that you have to—if you believe that the pronoun her should have been included, then, you know, we're really only talking about the differences four words across. That one word change several places might be harmless. I'm going with the theory that goes along with it. I think I understand what you're saying.  Just to make sure I understand your position. I mean, if your colleague is right about this, all the evidence that you put on for harmless error purposes, you put on a significant amount of evidence that her ordinary business practice, her ordinary medical practice, was to effectively be a drug dealer. And so if she was being a drug dealer, she was being a drug dealer. That is wholly consistent with her ordinary medical practice, which was being a drug dealer. And so if your colleague is right that so long as she was acting subjectively in accord with her own drug dealing practice by dealing drugs, it wouldn't be harmless, right? Because it's in fact exactly, you know, what you've proved. You've proved that she's operating a medical practice that is a drug dealer. Yes, Your Honor, we did prove beyond a reasonable doubt that the defendant was a drug dealer. I will note that part of her medical practice was having patients sign a contract that stated her policies, which she herself did not enforce. So even if the defendant's theory that any doctor whose business model is a drug dealer, like this one, acts consistently across all patients, she did not act consistently with how she advertised her practice, as evidenced by the fact that she made statements to the Board of Medicine that, I'm going to do this. I understand that I need to enforce these policies. I'm going to do them. I'm going to have all my patients sign these policies that, you know, are to enforce within my practice and then didn't do them. So she herself did not act consistently with what she held her professional practice out to be, assuming my colleague is correct. No, I'm done. Thank you. Thank you, counsel. We ask that the court affirm. Your Honor, let me address the last point as to whether Dr. Ball was the quintessential drug dealer. Dr. Ball had a practice, Your Honors, of about 70 to 75 patients. But your theory, just to make sure I understand it, your theory is, except it is a hypothetical, right? I know you want to fight on the facts. But except it is a hypothetical, that if you have a doctor whose entire medical practice is to prescribe drugs for addicts, like just assume hypothetically, which is not necessarily this case, that's their entire practice, is to prescribe drugs for known addicts and to get paid as a result of it. It seems like to me your theory is that that person would subjectively believe that they were acting within their own medical practice, that is, being a drug dealer. And so that person, under your theory, is not guilty. No. Am I right about that? No. Tell me why that your theory doesn't go that far, because it seems like that's what you're saying. It goes to what Justice Alito said in his concurrence. If you're issuing a prescription, that is not a valid means of pursuing a medical purpose. I understand. Listen, I can read Justice Alito as well as you can, right? Yes, Your Honor. What I'm asking is why your theory that it's the person's idiosyncratic medical practice that matters, if the idiosyncratic medical practice is being a drug dealer and they act consistent with that subjectively. I intend to be a drug dealer. I intend to sell drugs. And my entire medical practice is to sell drugs. I'm a drug dealer. It's turtles all the way down. I'm a drug dealer at every possible mental state and objective action. I think, under your view, she is acting consistent in that scenario with her medical practice, as you're trying to have it defined. Tell me why that's wrong. If your hypothetical is the doctor knows that they are issuing prescriptions for either diversion or to maintain a drug habit, and all they want to do is make money, they're a criminal. I totally agree. And why under—so maybe— That's not our case. But tell me why you think they're a criminal. Why do they—particularly on the prong that we're talking about, the medical practice. Yes. Why are they guilty under the medical practice piece of this? Because they don't have a subjective good faith belief that the prescriptions they're issuing are for a valid medical purpose. So it's only that. So they may fail there. But you would say that, in that instance, they are acting consistent with her own medical drug dealing practice. So the second piece, in that scenario, you would think the government can't prove that piece of the test. I respectfully disagree. It wouldn't be a medical practice. It'd be a drug enterprise. I respectfully disagree with the assumption. If you're a drug dealer— Then why is it not a medical practice? Are you looking at some objective standard of a medical practice? I thought you've been telling us that we're just looking at her subjective understanding of her medical practice. And so what's the objective standard that you tell me that what she's doing is not a medical practice? I will talk about Dr. Ball's practice. No, no. But I want to know the theory. What is the objective standard that you're measuring my hypothetical against to say that's not a medical practice? Because the doctor in your hypothetical, Your Honor, is admittedly issuing prescriptions not for a valid, legitimate medical purpose, is issuing prescriptions to pursue drug deals, to maintain an addiction, or for diversion and selling. That's not a medical practice. That's a drug enterprise under the cloak of a doctor. And you say that because you have some objective understanding of what medical practice means. That's correct. Yes. But in this case, I just want to focus on who Dr. Ball was. She had 70, 75 patients. Only about 33 were narcotics. And of the 33, only 27 received drugs. Six did not. And I want to compare—last point on this, Your Honor, is I want to compare this case, Dr. Ball's case, to United States versus Holschulz of the Seventh Circuit. In that case, it was a nurse practitioner. She had waiting lists of patients. She had lines of patients at the door when she's opening. She had nurses that quit because she was going to fire them if they didn't do the wrong thing. How much did she make a year? She made a million dollars over two years. Dr. Ball—and this is in the record—Dr. Ball had an idiosyncratic, unique practice in her home. She made, after taxes, $19,000 a year. Probably would have made less if she wasn't dealing drugs. Thank you, Counsel. Thank you, Your Honor.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Nicole G. Berner